USCA1 Opinion

 

 September 24, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _____________________ No. 92-1251 UNITED STATES OF AMERICA, Plaintiff, Appellant, v. RICHARD P. RUST, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Edward F. Harrington, U.S. District Judge] ___________________ ____________________ Before Torruella, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Brody,* District Judge. ______________ ____________________ Alexandra Leake, Assistant United States Attorney, with whom A. _______________ __ John Pappalardo, Acting United States Attorney, was on brief for the _______________ United States. Harry C. Mezer, P.C., with whom Jack I. Zalkind was on brief for ____________________ _______________ appellee. ____________________ ____________________ ____________________ *Of the District of Maine, sitting by designation. CAMPBELL, Senior Circuit Judge. The defendant, _____________________ Richard P. Rust, pled guilty in the district court to one count of wire fraud in violation of 18 U.S.C. 1343, and was sentenced to two-months home detention, two-years probation, and restitution in the amount of $14,904. Pursuant to 18 U.S.C. 3742(b), the government now appeals from this sentence, arguing that the court clearly erred in finding that defendant's offense did not involve more than minimal planning under U.S.S.G. 2F1.1(b)(2). As we are constrained to agree, we vacate and remand for resentencing. I. I. Richard Rust, the former director of the Massachusetts Office of Travel and Tourism, was charged in an information with one count of wire fraud in violation of 18 U.S.C. 1343. The information charged that for a period of more than four years, from August 1984 to October 1989, the defendant devised and executed a scheme to defraud the Commonwealth of Massachusetts through the falsification of his Travel Expense Vouchers and the alteration of underlying support documents. In his plea agreement with the government, the defendant stipulated that the offense had involved more than minimal planning within the meaning of U.S.S.G. 2F1.1, and, therefore, the appropriate total offense level was 11. A two-level increase in the base offense level is mandated by -2- U.S.S.G. 2F1.1(b)(2) if the offense involves "more than minimal planning." Under this offense level and defendant's criminal history category, the guideline range required incarceration for from 8 to 14 months. The presentence report agreed with the parties' calculation of the total offense level and with the parties' position that the offense had involved more than minimal planning. The defendant did not object to this aspect of the presentence report. At the sentencing hearing, however, defendant's attorney suggested that "if the Court felt this was not a jail case [the court] could say it did not involve more than minimal planning." The court then inquired of the defendant, "[h]ow much planning did you do when you concocted these documents?" Defendant responded that "the most planning [he] ever did was to take out a pair of scissors and a bottle of glue on a couple of instances, and in most instances it was handwriting." In addition, defendant's attorney contended that the falsifications were "so obvious that when they saw it they picked it up almost immediately. That . . . shows minimal planning, because if he had planned the thing with maximum effort, then perhaps he wouldn't have got caught." The government countered that, over a period of more than four years, defendant had submitted 23 false Travel Expense Vouchers, seeking a total of approximately $15,000 in false expenses. The government noted that the defendant -3- often saved airline tickets from personal trips and submitted them as expenses from business trips. Moreover, defendant frequently altered the underlying receipts and tickets to support his claims in the Travel Expense Vouchers. For example, defendant, on numerous occasions, altered gratis or reduced fare tickets to reflect a full price fare by cutting and pasting a full fare block from another ticket, or by obliterating the reduced fare and inserting the full fare in his own handwriting. Furthermore, on other occasions, defendant added digits to the ticket price so as to increase the amount for which he was seeking reimbursement. Defendant made similar alterations for receipts of other expenses, such as lodging. According to the government, these actions quite clearly constituted more than minimal planning. At the conclusion of these arguments, the district court stated: I have to say I have never in my years here . . . I have never received more laudatory recommendations and endorsements than I have in this case, and it has moved me tremendously. So I am going to find that the offense involved not more than minimal planning. I am going to impose the following sentence: Two years probation, a two- month home detention. As a condition of probation, restitution in the amount of [$14,904]. -4- The district court gave no other rationale for its finding that the offense did not involve more than minimal planning. This appeal followed. II. II. A district court's factual finding that a defendant's offense involved no more than minimal planning will be overturned only if that finding is clearly erroneous. E.g., United States v. Gregorio, 956 F.2d 341, 343 (1st Cir. ____ _____________ ________ 1992); see 18 U.S.C. 3742(e). Under this standard, a ___ district court's determination will be treated with deference and will be reversed only if, after reviewing all the evidence, we are left with "the definite and firm conviction that a mistake has been committed." United States v. Vega- _____________ _____ Encarnacion, 914 F.2d 20, 24 (1st Cir. 1990) (quoting ___________ Anderson v. Bessemer City, 470 U.S. 564, 573 (1984)), cert. ________ _____________ _____ denied sub nom. Cruz-Rosario v. United States, 111 S. Ct. ________________ ____________ ______________ 1626 (1991). After reviewing the presentence report and the transcript of the sentencing hearing, we conclude that such a mistake was made here. The Application Notes in the Sentencing Guidelines define "more than minimal planning" as follows: `More than minimal planning' means more planning than is typical for commission of the offense in a simple form. `More than minimal planning' also exists if significant affirmative steps were taken to conceal the offense . . . . `More than minimal planning' is deemed present in any case involving repeated acts over -5- a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses. U.S.S.G. 1B1.1, Application Note 1(f). Thus, the Guidelines set out three situations, any one of which warrants an enhancement for "more than minimal planning": cases where more planning occurs than is typical for commission of the offense in a simple form; cases involving significant affirmative steps to conceal; and cases involving repeated acts over a period of time, unless each instance was purely opportune. United States v. Maciaga, 965 F.2d 404, ______________ _______ 407 (7th Cir. 1992). Defendant contends that he engaged in no more planning than would be typical for the crime of mail fraud, which, by its very nature, involves planning. However, even supposing, for sake of argument, that the district court could reasonably believe this was so, it would not, by itself, settle the matter. The Application Note also deems the presence of minimal planning "in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune." Defendant's fraudulent scheme here involved repeated acts over a four-year period, and those acts cannot reasonably be characterized as "purely opportune." Conduct is "purely opportune" only if it is spur of the moment conduct, intended to take advantage of a sudden -6- opportunity. Gregorio, 956 F.2d at 343; United States v. ________ _____________ Kopp, 951 F.2d 521, 536 n.21 (3d Cir. 1991). Defendant ____ contends that his rather shoddy workmanship in falsifying the vouchers indicates that the alterations were done on the spur of the moment. However, the intricate detail involved with some of the alterations, as well as the necessity that defendant undertake several steps in order to secure payment for the fraudulent vouchers, belie this contention. See, ____ e.g., United States v. Tardiff, No. 91-2040, slip op. (1st ____ ______________ _______ Cir. July 8, 1992) (falsifying financial records on a monthly basis over a four-year period held to justify enhancement under U.S.S.G. 2F1.1(b)(2)); Gregorio, 956 F.2d at 343 ________ (conduct not "purely opportune" where each loan transaction necessitated several steps); United States v. Doherty, No. ______________ _______ 91-3291, 91-3352, 1992 U.S. App. LEXIS 16866 (7th Cir. July 24, 1992) (clear error for district court to fail to consider whether overdrafting 40 checks during a single month constituted repeated acts that were more than purely opportune). It strains credulity to suggest that no more than minimal planning was involved in submitting 23 intricately altered vouchers over the course of four years.1 ____________________ 1. Moreover, defendant took "significant affirmative steps" to conceal his offense. See U.S.S.G. 1B1.1, Application ___ Note 1(f). Defendant deleted dates and amounts on some receipts and cut and pasted portions of other receipts in order to conceal his fraudulent expense vouchers. Such concealment provides an independent basis to require a finding of more than minimal planning. See, e.g., United ___ ____ ______ -7- While deference is certainly owed to findings of the district court on the issue of minimal planning, that court made no findings and rendered no analysis in support of its "minimal planning" determination here. Rather, it simply spoke of the laudatory recommendations it had received, presumably in regard to defendant's good character and his person. We can appreciate the district court's desire to take such matters into account. But we are also bound, as was the court below, by the requirements of the sentencing guidelines. Under these standards, we see no alternative but to vacate the sentence of the district court and to remand for resentencing in accordance with this opinion. So ordered. __________ ____________________ States v. Culver, 929 F.2d 389, 393 (8th Cir. 1991). ______ ______ -8-