91 F.3d 145
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kathy Lynn WILSON, Defendant-Appellant.
 No. 95-6568.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1996.
 
 Before: BROWN, MARTIN, and BOGGS.
 PER CURIAM.
 
 
 1
 The defendant, Kathy Lynn Wilson, pleaded guilty to one count of forging a U.S. Treasury check in violation of 18 U.S.C. § 510. The district court then sentenced her to eighteen months' imprisonment, the maximum sentence allowed under the applicable guideline range. Wilson appeals from this sentence, arguing that the district court erred in applying a two-level enhancement to her offense level because her offense involved "more than minimal planning." For the reasons set forth below, we AFFIRM the district court.
 
 
 2
 Wilson worked at Moore's Boarding Home, a boarding house owned by her mother. Nellie Rogers was a resident at the boarding house until she moved away at the end of September 1992. While she resided at the house, Rogers authorized boarding house personnel to take her monthly Social Security checks from the mail, endorse them on her behalf, and use the funds to defray the costs of her boarding. The boarding house's authority to do so terminated, however, when Rogers moved away. Despite this, Wilson took Rogers's October Social Security check, dated October 1, 1992, from the boarding house mail, forged an endorsement, and deposited it in her own personal account. Wilson repeated this procedure with Rogers's November check, dated October 30, 1992, and her December check, dated December 1, 1992.
 
 
 3
 Rogers finally complained to the government that she had not received those checks, and an investigation followed. When interviewed by Secret Service investigators, Wilson attempted to explain away her conduct. When asked about the October check, Wilson claimed that negotiating it was a simple mistake resulting from confusion, and that she had paid restitution to the victimized bank. Additionally, when later confronted with all three checks, Wilson claimed that she had had the authority to negotiate the checks, and that all the proceeds had been either spent on Rogers, or forwarded to her.
 
 
 4
 A grand jury indicted Wilson on three counts of forging a United States treasury check, and she eventually pleaded guilty to one count in exchange for the government's dropping the other two. At her sentencing hearing, Wilson objected to the conclusion in her Presentence Investigation Report (PSR) that a two-level enhancement for more than minimal planning was appropriate. Wilson did not challenge the factual findings in the PSR. The parties agree that the District Court correctly applied U.S.S.G. § 2F1.1 (1995), which provides a base offense level of six. The parties dispute only whether the court erred in finding that the conduct relevant to the offense warranted applying section 2F1.1(b)(2) which states: "If the offense involved ... more than minimal planning ... increase by 2 levels."
 
 
 5
 We will reverse a district court's enhancement for "more than minimal planning" only if it is clearly erroneous. United States v. Griggs, 47 F.3d 827, 830 (6th Cir.1995). "Under this standard, a district court's determination will be treated with deference and will be reversed only if, after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been committed." United States v. Rust, 976 F.2d 55, 57 (1st Cir.1992) (internal quotation marks omitted). In determining whether to apply an enhancement, the district court was required to consider all of Wilson's "relevant conduct," which includes all three instances of forgery. United States v. Ivery, 999 F.2d 1043, 1046 and n. 2 (6th Cir.1993).
 
 
 6
 This court has stated that " '[m]ore than minimal planning' exists in situations involving: (1) more planning than is typical for commission of the offense in simple form; (2) significant affirmative steps ... taken to conceal the offense; or (3) repeated acts over a period of time, unless it is clear that each instance was purely opportune." Griggs, 47 F.3d at 830 (citation omitted). We conclude, upon a review of all the "relevant conduct," that the district court did not commit clear error in finding that Wilson's offense involved "more than minimal planning." One could find that Wilson took "significant affirmative steps" to conceal her offense when, on two separate occasions, she lied to Secret Service investigators about her authority to endorse the checks and about the use of the proceeds. First, Wilson represented that the endorsement of the October check was a mistake that she had corrected by making restitution to the endorser bank. Second, Wilson later told the Secret Service that Rogers actually gave her the authority to endorse all three checks and distribute the funds.
 
 
 7
 Moreover, Wilson negotiated three different checks belonging to Rogers over a three month period of time. Obviously, these are "repeated acts over a period of time." Wilson argues, however, that the district court should have found "that each instance was purely opportune." We disagree. "Conduct is 'purely opportune' only if it is spur of the moment conduct, intended to take advantage of a sudden opportunity." Rust, 976 F.2d at 57. In this case, Wilson seized the opportunity to profit from Rogers's moving out within days of her departure, by stealing Rogers's October check. Wilson then repeated her conduct by stealing Rogers's November and December checks. Had Wilson acted only once, we might view this case differently. The fact that she stole three consecutive checks, however, suggests to us that Wilson was lying in wait and watching the mail, with the hope that Rogers's checks would continue to come to the boarding house. A district court could legitimately conclude that this activity--unlike simply happening across a solitary misaddressed check in the mail--was more than "spur of the moment conduct."
 
 
 8
 For the reasons set forth above, we AFFIRM Wilson's sentence.