# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 15, 2006      Decided October 31, 2006

No. 05-3065

UNITED STATES OF AMERICA,
APPELLEE

v.

VINCE A. SOUTHERLAND,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00233-01)

*Neil H. Jaffee*, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was *A. J. Kramer*, Federal Public Defender.

*Nicholas P. Coleman*, Assistant U.S. Attorney, argued the cause for appellee. With him on the briefs were *Kenneth L. Wainstein*, U.S. Attorney at the time the brief was filed, and *Roy W. McLeese, III*, and *Thomas J. Tourish, Jr.*, Assistant U.S. Attorneys.

Before: RANDOLPH and GRIFFITH, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* RANDOLPH.

RANDOLPH, *Circuit Judge*: Vince A. Southerland's appeal from a criminal conviction for possessing illegal drugs with the intent to distribute them originally raised the question whether the police violated the Fourth Amendment when, in executing a search warrant, they knocked on the door of a residence where he was staying, announced their identity and purpose, waited ten seconds and then broke the door open with a battering ram. After briefing, in which Southerland argued that the district court erred in not suppressing the drugs, cash and a scale found on the premises, the Supreme Court decided *Hudson v. Michigan*, 126 S. Ct. 2159 (2006). In light of *Hudson*'s holding that the exclusionary rule did not apply to Fourth Amendment knock-and-announce violations, we called for supplemental briefing. Southerland has now understandably abandoned his Fourth Amendment argument, but he insists that the evidence should be suppressed under 18 U.S.C. § 3109, a claim he raised in the district court.

Only officers of the Metropolitan Police Department were involved in the search. Technically, § 3109 – which governs the conduct of federal officers – therefore does not apply. We do not make anything of this distinction because a statute of the District of Columbia incorporates § 3109 as the standard applicable to local law enforcement officers. D.C. CODE § 23-524(a) (2001); *see Artis v. United States*, 802 A.2d 959, 968 n.8 (D.C. 2002). Both the local statute and § 3109 are restricted to the execution of search warrants and both are silent about remedies for violations. Section 3109 states as follows:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when

necessary to liberate himself or a person aiding him in the execution of the warrant.

The Supreme Court, having decided that the Fourth Amendment incorporated the English common law knock-and-announce requirement, *see Wilson v. Arkansas*, 514 U.S. 927, 934 (1995); *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997), held that "§ 3109 codifies the common law in this area, and the common law in turn informs the Fourth Amendment," *United States v. Ramirez*, 523 U.S. 65, 73 (1998). It thus comes as no surprise that each of the reasons *Hudson* gave for not applying the exclusionary rule to knock-and-announce violations of the Fourth Amendment applies equally to violations of § 3109. Among those reasons are that the knock-and-announce requirement does not protect an individual's interest in shielding "potential evidence from the government's eyes," *Hudson*, 126 S. Ct. at 2165; that "imposing th[e] massive remedy" of suppression "for a knock-and-announce violation would generate a constant flood of alleged failures to observe the rule," *id.* at 2165-66; that questions about whether the police waited long enough before entering would be "difficult for the trial court to determine and even more difficult for an appellate court to review," *id.* at 2166; that any deterrent value from suppressing evidence in these cases would not be "worth a lot," *id.*; that civil damage actions would still provide some deterrence, *id.* at 2166-68; and that "[a]nother development over the past half-century that deters civil-rights violations is the increasing professionalism of police forces, including a new emphasis on internal police discipline," *id.* at 2168.

Because the costs of suppressing evidence in knock-and-announce cases are so high and the benefits so slim, and because a federal officer violating § 3109 also violates the Fourth Amendment, *Hudson* compels us to reject the exclusionary rule as a remedy for violations of § 3109, unless Supreme Court

precedent stands in the way.[1] *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989), holds that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Southerland claims that *Miller v. United States*, 357 U.S. 301 (1958), and *Sabbath v. United States*, 391 U.S. 585 (1968), are such "direct" precedents. We think not.

*Miller* held that because the defendant "did not receive notice before the officers broke the door to invade his home, the arrest was unlawful, and the evidence seized should have been suppressed." 357 U.S. at 313-14. The policeman and the federal narcotics officer who entered the home in *Miller* did so in order to make a warrantless arrest. *Id.* at 305. Section 3109 therefore did not apply: then, as now, the statute governed only entries for the purpose of executing search warrants. The *Miller* Court stated that a "local" knock-and-announce rule this court had fashioned bore such a "close relationship" to § 3109 that "the validity of the entry to execute the arrest without a warrant must be tested by criteria identical to those embodied in" the statute. *Id.* at 306. *Miller* identified *Accarino v. United States*, 179 F.2d 456, 465 (D.C. Cir. 1949), as the source of the "local" rule. *Miller*, 357 U.S. at 306. *Accarino* contains a lengthy discussion of English common law, as well as several Supreme

---

[1] Before *Hudson* this court had ruled that the remedy for a violation of § 3109 was suppression of the evidence found in the search. *See, e.g.*, *Woods v. United States*, 240 F.2d 37, 39 (D.C. Cir. 1956). Because our conclusion – that a suppression remedy is no longer available under § 3109 – conflicts with this precedent, this opinion has been circulated to and approved by the full court. *See Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981).

Court Fourth Amendment cases, but does not mention § 3109. If, in ordering the suppression of evidence, *Accarino* rested on the Fourth Amendment, as this court later said it did, *see, e.g.*, *McKnight v. United States*, 183 F.2d 977, 978 (D.C. Cir. 1950), it is of course directly contrary to *Hudson*. In any event, the Supreme Court's *Miller* decision, which applied *Accarino*'s "local" rule, cannot be considered a "direct" precedent that violations of § 3109 require the suppression of evidence. Nor can the other case Southerland cites. Like *Miller, Sabbath* invoked § 3109 by analogy to hold that an entry for the purpose of making an arrest was illegal. It too is not a direct holding under § 3109.

We also believe that if we were to view *Miller* and *Sabbath* as directly mandating a suppression remedy for violations of § 3109, those decisions would conflict with *Hudson*. Before *Hudson* the Supreme Court began treating § 3109 and the knock-and-announce rule of the Fourth Amendment as identical, *see Ramirez*, 523 U.S. at 73, which is why "the result should be the same under the Fourth Amendment and § 3109," *United States v. Banks*, 540 U.S. 31, 42 (2003). Southerland points out that in *Sanchez-Llamas v. Oregon*, 126 S. Ct. 2669, 2679 (2006), the Court said that although "*Miller* is not clear about its authority for requiring suppression," the authority seems to rest on the supervisory power. This, according to Southerland, distinguishes *Hudson* because the supervisory power of the federal courts serves the dual purposes of "deterring illegality and protecting judicial integrity," *United States v. Payner*, 447 U.S. 727, 736 n.8 (1980), whereas the primary purpose of the Fourth Amendment exclusionary rule is "to deter future unlawful police conduct," *United States v. Calandra*, 414 U.S. 338, 347 (1974). The argument is odd, involving as it does the proposition that it is more important to ensure compliance with a federal statute governing entries into the home than with a constitutional provision that does exactly the same. More than

that, the Supreme Court has rejected Southerland's premise. In the same footnote from *Payner* that Southerland quotes, the Court stated that "the Fourth Amendment exclusionary rule serves precisely the same [twofold] purposes" as the supervisory power. *Payner*, 447 U.S. at 736 n.8; *accord United States v. Mount*, 757 F.2d 1315, 1321 (D.C. Cir. 1985) (Bork, J., concurring).

The short of the matter is that § 3109 and the Fourth Amendment have merged both in the standards governing entries into the home and in the remedy for violations of those standards. There is now one uniform knock-and-announce rule. We are thus faced with a conflict between Supreme Court decisions, a circumstance outside the *Rodriguez* decision requiring lower courts to follow a Supreme Court precedent directly on point even if later decisions have undercut its rationale. *See Mozee v. Am. Commercial Marine Serv. Co.*, 963 F.2d 929, 935 (7th Cir. 1992). As to which line should be followed, we think it plain that *Hudson*, not *Miller* and *Sabbath*, now must control. Not only is *Hudson* the Court's most recent pronouncement about whether evidence should be excluded as a remedy for knock-and-announce violations, but it is also the Supreme Court's only thorough analysis of the issue. From all that appears, *Miller* and *Sabbath* merely assumed that suppression followed a violation. *See also Wong Sun v. United States*, 371 U.S. 471, 482-83 (1963). We therefore hold that even if the entry here violated § 3109, a question we do not decide, Southerland was not entitled to suppression of the evidence seized during the search.

*Affirmed*.